**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SHAWN WOODWARD, | |
| Plaintiff | Civil Action No. 23-450 (RMB-SAK) |
| v. | **OPINION** |
| SERGEANT TAMBINI, et al., | |
| Defendants | |

**APPEARANCE:**

Sean Patrick Joyce, Esq.
Carmagnola & Ritardi, LLC
60 Washington Street
Morristown, NJ 07960
      On behalf of Defendants Tambini, Myers and Lopez.

RENÉE MARIE BUMB, Chief United States District Judge

      This matter comes before the Court upon the unopposed Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 filed by Defendants Sergeant Peter Tambini ("Tambini"), Kitchen Supervisor Candyce Myers ("Myers") and Minister/Reverend Jose Lopez ("Lopez") (collectively "Defendants"), staff members at Mid-State Correctional Facility. Answer, Dkt. No. 12; Mot. for Summ.

J., Dkt. No. 59.[1]  Pursuant to Federal Rule of Civil Procedure 78(b), the Court will determine the matter on the record without oral argument.  Having considered the brief, motion and relevant record, the Court finds that summary judgment for Defendants is warranted, for the reasons set forth below.

I.      BACKGROUND

Plaintiff, an inmate previously incarcerated at Mid-State Correctional Facility ("MSCF") in Wrightstown, New Jersey, alleges violations of his rights under the First and Fourteenth Amendments in a verified complaint[2] filed on January 25, 2023.  Compl., Dkt. No. 1.[3]  Specifically, Plaintiff alleged that in July 2021, at MSCF, Sergeant Tambini and Correctional Officer Myers[4] discriminated against him based on his ethnicity and religion by ignoring his seniority and passing him over for

---

[1] Defendants filed a joint summary judgment motion in Civil Action Nos. 23-450 (RMB-SAK) and 23-445 (RMB-SAK).  Civil Action No. 23-445 was administratively terminated under Local Civil Rule 10.1(a) on January 15, 2025, after Plaintiff's legal mail was returned to the Court because Plaintiff failed to provide the Court with his new address.  Plaintiff has not sought to reopen Civil Action No. 23-445.  The Court, therefore, will not address Defendants' motion for summary judgment in the closed case.

[2] A verified complaint is based on personal knowledge and filed under penalty of perjury.  *See e.g., Reese v. Sparks*, 760 F.2d 64, 67 n.3 (3d Cir. 1985).  In paragraph 84 of the Complaint, Plaintiff stated "Plaintiff declares under the penalty of perjury that the above is true based upon personal knowledge and/or that which is believed to be true."  Compl. at 34.

[3] These are the sole claims in Plaintiff's complaint that were permitted to proceed past screening under 28 U.S.C. § 1915(e)(2)(B) in Civil Action 23-450.  Other claims were severed based on improper joinder and divided into new civil actions.  Opinion, Dkt. No. 2.

[4] In his deposition, Plaintiff explained there are two different defendants with the last name Myers, one who is a male correctional officer, and one who is a female kitchen supervisor.  Ex. M. at 32; Dkt. No. 59-4 at 139.  Only Candyce Myers, the kitchen supervisor, moves for summary judgment here.

a favorable bunk assignment. *Id.* at 23-25. For his First Amendment free exercise of religion claims against Myers and Lopez, Plaintiff alleges Myers was in charge of MSCF's kitchen and Lopez was in charge of all religious activity in the prison. Compl. at 30. There was a Muslim holiday on July 20, 2021. *Id.* at 29-31. Myers and Lopez delayed service of the festive meal to all Muslims, including Plaintiff, based on non-security reasons. *Id.* at 30. On July 28, 2021, the rescheduled festive meal date, Myers and Lopez delayed service of the meal until August 4, 2021. *Id.* at 31. For his last claim in this action, Plaintiff alleges Myers removed him from his kitchen work assignment near the end of November 2021, in retaliation for his conduct of filing grievances. Compl. at 31-33.

Defendants contend they are entitled to summary judgment and also protected by qualified immunity on each of Plaintiff's claims. Brief in Supp. of Defs' Mot. for Summ. J. ("Defs' Brief") Dkt. No. 59-1.

## II.   STANDARD OF REVIEW

### A.   Summary Judgment

In making a summary judgment determination, "the facts must be viewed in the light most favorable to the nonmoving party and all inferences must be drawn in that party's favor[.]" *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is

genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once this burden is met, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Speculation, conclusory allegations, or mere denials are insufficient to raise genuine issues of material fact. *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999), *superseded by statute on other grounds as recognized in P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 730 (3d Cir. 2009). When a motion for summary judgment is unopposed, "pursuant to Local Civil Rule 56.1(a), Defendants' statements of material facts not in dispute … are deemed undisputed[.]" *Fiori-Lacivita v. Franco-Palacios*, No. CV 16-4445 (RBK/JS), 2019 WL 6255783, at *1 (D.N.J. May 7, 2019).

"[A] pro se prisoner's signed and dated complaint, made under penalty of perjury … qualifies as a verified complaint, which may be treated as an affidavit in opposition to a motion for summary judgment under Federal Rule Of Civil Procedure 56, to the extent it sets forth specific facts based on personal knowledge." *Brown v. Dow*, No. CIV. 08-4330 RMB/AMD, 2011 WL 5080179, at *2 (D.N.J. Oct. 25, 2011) (citing *Neal v. Kelly*, 963 F.2d 453, 457–58 (D.C.Cir.1992) and *Athill v. Speziale*, No. 06–4941, 2009 WL 1874194, at *1 (D.N.J. June 30, 2009)); *see also Coit*

*v. Garman*, 812 F. App'x 83, 87 (3d Cir. 2020) ("a sworn complaint can be treated as an affidavit on summary judgment[,]" but if the allegations in the complaint contradict the Plaintiff's deposition testimony, the allegations in the complaint may be treated as a "sham affidavit").

### B. Qualified Immunity

The doctrine of qualified immunity "shields officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Minor v. Delaware River & Bay Auth.*, 70 F.4th 168, 173 (3d Cir. 2023) (cleaned up). Determination of the qualified immunity defense requires courts to resolve two inquiries: "(1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was clearly established at the time of the official's conduct." *Id.* (cleaned up). A right is not clearly established unless it is "so clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (cleaned up). A right becomes clearly established when it is derived from "binding Supreme Court and Third Circuit precedent or from a robust consensus of cases of persuasive authority in the Courts of Appeals." *Id.* (cleaned up).

## III. DISCUSSION

### A. First Amendment Free Exercise Claims

Plaintiff alleged the following facts in support of First Amendment Free Exercise claim against Myers and Lopez in his verified complaint. Plaintiff was

incarcerated at MSCF on July 20, 2021, a Muslim holy holiday known as Eid-ul-Adhaa.  Compl. at 29.  It is obligatory for adherents to pray, eat a meal of the sacrifice animal, and participate in festival events with Muslims.  *Id.* at 29-30.  Myers and Lopez delayed the festive meal until July 28, 2021, for non-security reasons.  *Id.* at 30.  On July 28, 2021, Muslim inmates were told their festive meal would be delayed until August 4, 2021, because kitchen staff had to cook for Officers Appreciation Day.  *Id.* at 31.  The religious meal was not served until August, 4, 2021.  *Id.*

Defendants submit the following facts are undisputed.  *See* Local Rule 56.1 Statement of Undisputed Material Facts in Support of Defs' Mot. for Summ. J. ("SUMF") Dkt. No. 59-2.  On July 28, 2021, Plaintiff filed a grievance concerning two delays in providing the Eid-ul-Adhaa festive meal.  SUMF ¶ 44; July 28, 2021 Grievance ("Ex. H"), Dkt. No. 59-4 at 116.  Plaintiff received a reply to his grievance on August 11, 2021, which stated, "[i]n accordance with NJDOC policy and procedures religious activities and meals are scheduled in accordance with the secure and orderly operation of the correctional facility.  Administration, working with food service, coordinated the facilitation of the celebration of Eidul-Fitr.[5]  SUMF ¶ 45; Ex. H.  On November 7, 2021, Plaintiff filed an inquiry demanding preservation of

---

[5] The response to Plaintiff's grievance refers to the wrong holiday.  "The Eid ul Fitr, according to the DOCS-employed religious authorities whose testimony was before the district court, is one of two major religious observances in Islam."  *Ford v. McGinnis*, 352 F.3d 582, 584 (2d Cir. 2003).  "Islam's other major religious observance, according to the DOCS religious authorities, is the Eid ul Adha."  *Id.* at n. 4).

6

evidence concerning the reasons staff delayed the religious meal. SUMF ¶ 46, November 7, 2021 Inquiry ("Ex. G"), Dkt. No. 59-4 at 114. On November 9, 2021, Plaintiff received a response that MSCF, in good faith, notified the population of changes that were made in programming, and no rights were violated because the religious holiday was observed. SUMF ¶ 47; Ex. G. In his deposition testimony, Plaintiff said he was never provided with an explanation for the first delay of the festive meal. Deposition of Shawn Woodward ("Ex. M") at 39-44, Dkt. No. 59-4 at 131. The response to his inquiry, however, stated "[t]hese are still unprecedented times for all of us. Nothing is as it was and you must look to the bigger picture to understand, festivals and events, may have to be modified, delayed, altered or changed…." Ex. G. The Court takes judicial notice that COVID-19 remained a public health emergency in July 2021, with spread of the highly transmissible Delta variant.[6] In his verified complaint, Plaintiff alleges Myers told him the second delay of the festive meal was due to the kitchen staff cooking for Officer Appreciation Day on July 28, 2021. Compl. at 42.

"Inmates clearly retain protections afforded by the First Amendment … , including its directive that no law shall prohibit the free exercise of religion. *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987). "An inmate retains his First Amendment

---

[6] *See* "Guidance for Implementing COVID-19 Prevention Strategies in the Context of Varying Community Transmission Levels and Vaccination Coverage" CDC Morbidity and Mortality Report, July 30, 2021, available at https://www.cdc.gov/mmwr/volumes/70/wr/mm7030e2.htm, last visited March 11, 2025.

rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Sharp v. Johnson*, 669 F.3d 144, 155 (3d Cir. 2012) (cleaned up). The Supreme Court, therefore, found that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 156 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The Supreme Court identified four factors that are relevant to the reasonableness of a prison regulation:

> (1) there must be a "valid, rational connection" between the prison regulation and the legitimate, neutral governmental interest put forward to justify it (the "First Turner Factor"); (2) whether the inmate has alternative means of exercising the right at issue; (3) the burden that the accommodation would impose on prison resources; and (4) whether any ready alternatives to the regulation exist that would fully accommodate the inmate's rights at de minimis cost to valid penological objectives.

*Id.* (quoting *Turner*, 482 U.S. at 489-91). The prison has the burden to demonstrate the first factor, but the burden is slight and may be met as a matter of common sense. *Id.* The "ultimate burden of persuasion" to invalidate the prison regulation is on the inmate. *Id.* at 157 (quoting *Jones v. Brown*, 461 F.3d 353, 360-61 (3d Cir. 2006)).

Defendants met their "slight" burden to establish a valid rational connection between the delay in providing Plaintiff the religious festive meal, and the government interest in the secure and orderly operation of the facility. Plaintiff was advised administrative and kitchen staff "coordinated the religious celebration in accordance with NJDOC policy and procedures." Plaintiff was also advised of the need to be understanding of schedule changes during "unprecedented times" in July

8

2021. For the second delay of the meal, Plaintiff was advised of the lack of kitchen staff to prepare the meal on Officer's Appreciation Day.

Once Defendants met their burden to establish a rational connection between the delays in providing the religious festive meal and a legitimate government interest, it became Plaintiff's burden to establish the delays were unjustified, based on the second, third and fourth *Turner* factors. *See Sharp*, 669 F.3d at 156-59. Plaintiff did not address the second, third and fourth *Turner* factors in his verified complaint or his deposition testimony, and he did not respond to Defendants' motion for summary judgment. For the second *Turner* factor, the undisputed facts show Plaintiff had an alternative means of celebrating the religious holiday, the festive meal was provided on August 4, 2021. For the third *Turner* factor, the undisputed facts show there was an administrative burden on the prison in providing the festive meal on the day of observance, due to the unprecedent events of July 2021, and an administrative burden on the prison kitchen staff in providing the festive meal a week later, on the same day as Officer Appreciation Day. Finally, for the fourth *Turner* factor, Plaintiff failed to meet his burden to establish a ready alternative to providing the festival meal two weeks later, which would fully accommodate his right to free exercise of religion at de minimis cost to valid penological objectives. Defendants Myers and Lopez are entitled to summary judgment on Plaintiff's First Amendment Free Exercise claim.

Defendants also asserted they are entitled to qualified immunity on this claim.

Stated in the negative, a defendant is not entitled to qualified immunity "if the right, as properly framed, is sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Mack v. Yost*, 63 F.4th 211, 231 (3d Cir. 2023) (cleaned up). "A right is clearly established if there is either closely analogous caselaw establishing that a defendant's conduct was unlawful or evidence that the Defendant's conduct was so patently violative of the ... right that reasonable officials would know it to be a violation without guidance from a court." *Id.* at 232. In the Third Circuit, a right can be clearly established "even without a precise factual correspondence between the case at issue and a previous case." *Id.* Therefore, "'if the unlawfulness of the defendant's conduct would have been apparent to a reasonable official based on the current state of the law, it is not necessary that there be binding precedent from this circuit so advising." *Id.* (quoting *Williams v. Bitener*, 455 F.3d 186, 192 (3d Cir. 2006)).

First, this Court has not identified closely analogous binding Supreme Court precedent. The most analogous precedential Third Circuit case is *Williams v. Morton*, 343 F.3d 212 (3d Cir. 2003). In *Williams*, the Third Circuit held, despite the prisoner-plaintiffs' sincerely held religious belief in the requirement for Halal meat in their diets, the provision of nutritionally balanced vegetarian meals as an alternative did not violate their First Amendment rights because simplified food service, security, and budget constraints are legitimate penological interests. 343 F.3d 212, 219-21 (3d Cir. 2003). *Williams* did not clearly establish Plaintiff's right to a festive religious meal on the actual date of the observed holiday. Instead, *Williams* dictates

legitimate penological interests support an alternative accommodation for a religious diet without violating a prisoner's limited First Amendment rights. Reasonable officials in Defendants' circumstances would not have known a two-week delay in providing a festive meal for a religious holiday based on prison administration needs, the availability of staff, violated the Constitution. Therefore, Defendants are also entitled to summary judgment on the second prong of the qualified immunity doctrine.

### B. First Amendment Retaliation Claim

Plaintiff alleges that Myers removed him from his job in MSCF's kitchen in retaliation for two complaints he filed. Compl. at 32-33. First, Plaintiff filed a grievance about delayed service of a Muslim religious meal in July 2021. Compl. at 31. Second, on November 27, 2021, Plaintiff filed a grievance claiming Leonard, a cook at MSCF, in the presence of a dozen inmates, said that all black people steal. Compl. at 32. On November 29, 2021, Myers replied to Plaintiff's grievance, informing him that she filed for his job removal in the kitchen because he had been warned about making complaints. *Id.* In a meeting before MSCF's Classification Committee on December 8, 2021, Plaintiff was removed from his kitchen job because Myers did not tolerate complaints. Compl. at 33.

Defendants submitted the following undisputed facts. On November 27, 2021, Plaintiff filed a grievance stating: "On the date of 11-27-21 while in the kitchen and in the presence of at least 10 inmates, food service staff Ms. Matty (aka "Ms.

M") stated that all black people steal." SUMF ¶ 49; November 27, 2021 Grievance ("Ex. I") Dkt. No. 59-4 at 119. Myers responded:

> Mr. Woodward this incident was brought to my attention, and I want to rectify this immediately. I spoke with the staff who was present, as well as a few of the JIM's that were in the area at the time of the conversation. All of the witnesses who were present stated that what you said was incorrect, and not what Mrs. Leonard said during the conversation. This is a serious allegation you stated, that was not true. To avoid any future incidents, especially since you have been having issues with staff, couple[d] with this last situation, I am going to remove you myself from the kitchen. Thank you, Ms. Myers.

SUMF ¶ 51; Ex. I.

The next day, Plaintiff wrote to Myers "in exhausting my administrative remedies and to make sure that all parties have a full and fair opportunity to respond I would like those witnesses that were present to be interviewed." SUMF ¶ 52; Ex. I. Myers responded, "all involved parties were interviewed, and the matter is resolved as you are no longer a kitchen worker per supervisors. This matter has been brought to a peaceful resolve. Thanks." SUMF ¶ 53, Ex. I.

The elements of a First Amendment retaliation claim are: (1) plaintiff's conduct was constitutionally protected; (2) plaintiff suffered an adverse action at the hands of prison officials; and (3) plaintiff's constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). Even if these elements are met, Defendants can prevail on a retaliation claim if they would have made the same decision absent the

12

protected conduct, for reasons reasonably related to a legitimate penological interest. *Id.*

Defendants put forth undisputed evidence that Myers investigated Plaintiff's complaint and believed it to be untrue. Plaintiff was removed from his kitchen assignment at MSCF for making a serious, false allegation against a kitchen staff member. Based on the disruption this caused in the kitchen work environment and other issues Plaintiff had with staff, Myers terminated Plaintiff's work assignment. Based on the facts in the record, a reasonable jury could not conclude Myers fired Plaintiff simply because he filed two grievances. The first grievance was too remote in time, approximately 90 days before Plaintiff was fired from his kitchen assignment, to establish a causal link between his protected conduct of filing a grievance and the adverse action of removing him from the kitchen assignment. "[A] gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007).

For the second grievance, the undisputed evidence shows Myers took the grievance seriously, conducted an investigation, and found the grievance to contain a serious false allegation against a kitchen staff member. Without more, Plaintiff failed to establish retaliatory motive. Therefore, Myers is entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

### C. Fourteenth Amendment Equal Protection Claim

Plaintiff alleges it was the practice of MSCF staff, absent the need for a special accommodation, that new inmates were assigned to "highway bunks," bunks that are in plain view under the television and next to the windows. Compl. at 23-24. Pursuant to this practice, when a "nonhighway" bunk opened up, the inmate with the most seniority on the highway would be assigned to the nonhighway bunk. *Id.* at 24. Plaintiff had seniority on the highway, but Correctional Officer Myers said the nonhighway bunks would go to "Arroyo and Rodriguez, due to their nationalities." *Id.* Tambini stated inmates did not like having Muslims in the nonhighway bunks praying all day. *Id.* Plaintiff alleges Myers and Tambini violated his Fourteenth Amendment right to equal protection under the law. *Id.* at 25.

In support of summary judgment on this Equal Protection Claim, Defendants submit Plaintiff's deposition testimony. Plaintiff was assigned to a highway bunk when he first transferred into MSCF in July, 2021. SUMF ¶¶ 32, 33; Ex. M at 34, Dkt. No. 59-4 at 131. Plaintiff alleged in his verified complaint that he had seniority for assignment to a nonhighway bunk when he was moved to a new housing unit in MSCF in or around July or August 2021. Compl. at 24. Myers told him the nonhighway bunks would be assigned to Arroyo and Rodriguez "based on their nationalities." *Id.* Tambini told Plaintiff inmates do not like Muslims in the area praying all day. *Id.* at 24-25.

On September 25, 2021, Plaintiff submitted the following inmate inquiry to staff:

14

> my question is if there are three (3) inmates on the highway (the highway are beds 17 top & bottom to 20 top & bottom) and none of them have any valid issues (i.e., medical issues, etc.) that would dictate they move immediately off the highway (i.e., to any of the top 1 top or bottom to 16 top or bottom). What are the rules/regulation/law under 10A and/or Mid-State C.F. that dictate which inmate will move first to ensure that no inmates' rights to equal protection of the law is violated?

SUMF ¶ 36; Ex. E.

Three days later, Plaintiff received the following response, "[t]here is no law over who is moved on or off a particular bed. You are assigned to Mid-State Correctional Facility." SUMF ¶ 37; September 25, 2021 Inquiry ("Ex. E") Dkt. No. 59-4 at 109. Plaintiff acknowledged he was moved to a nonhighway bed a few months after his transfer to MSCF. SUMF ¶ 39; Ex. M at 35. Plaintiff was unsure whether any Muslims had issues similar to his, that non-Muslims were moved to highway bunks despite a Muslim's seniority on the highway. SUMF ¶ 40, Ex. M at 38-39. In his deposition, Plaintiff explained his issue was not with Tambini's statement about Muslims praying in the bed area; "[m]y question was why were they getting the bed area because they were Hispanic. That's what I asked about." *Id.* at 37.

"To state an equal-protection claim, Plaintiffs must allege (and ultimately prove) intentional discrimination." *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015), *as amended* (Feb. 2, 2016) (cleaned up). By his own admission, Plaintiff's claim is not that Tambini discriminated against him because he is Muslim, but that Correctional Officer Myers discriminated against him by favoring Hispanic inmates

15

over non-Hispanic inmates. Tambini, therefore, is entitled to summary judgment on Plaintiff's Equal Protection Claim. Correctional Officer Myers was never served and has not moved for summary judgment. *See supra* note 9.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**.

An appropriate order follows.


Dated:  March 26, 2025

s/ Renée Marie Bumb
RENÉE MARIE BUMB
Chief United States District Judge
